LINDA CLAXTON, CA Bar No. 125729
linda.claxton@ogletree.com
KATHLEEN J. CHOI, CA Bar No. 284428
kathleen.choi@ogletree.com
MELIS ATALAY, CA Bar No. 301373
melis.atalay@ogletree.com
SAGE S. STONE, CA Bar No. 304086
sage.stone@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213-239-9800
Facsimile: 213-239-9045

Attorneys for Defendant
NESPRESSO USA, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM BABER, an individual, on behalf of himself and all others similarly situated and aggrieved,<br><br>Plaintiff,<br><br>v.<br><br>NESPRESSO USA, INC., a Delaware corporation; NESTLE USA, INC., a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 2:20-cv-6533<br><br>**NOTICE OF REMOVAL BY DEFENDANT NESPRESSO USA, INC. PURSUANT TO 28 U.S.C. §§ 1332(D), 1441, AND 1446.**<br><br>[*Civil Cover Sheet, Certificate of Interested Parties, Declaration of Linda Claxton, and Declaration of Charity Mastrangelo filed concurrently herewith*]<br><br>Complaint Filed: June 3, 2020<br>Trial Date: None<br>District Judge: Hon. _____ |

NOTICE OF REMOVAL BY DEFENDANT NESPRESSO USA, INC. PURSUANT TO 28 U.S.C. §§ 1332(D), 1441, AND 1446.

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendant Nespresso USA, Inc. ("Nespresso"), through its undersigned counsel, hereby removes the above-captioned action from the Superior Court for Los Angeles County to the United States District Court for the Central District of California in accord with 28 U.S.C. §§ 1332(d), 1441, and 1446. The grounds for removal are as follows:

## I.     BACKGROUND

1.     On June 3, 2020, plaintiff William Baber, on behalf of himself and a proposed putative class, filed the lawsuit entitled *Baber v. Nespresso USA, Inc., et al.*, Case No. 20STCV21410, against Nespresso, Nestlé USA, Inc. ("Nestlé") and "DOES 1 through 100" in the Superior Court for Los Angeles County.

2.     Plaintiff served the Complaint on Nespresso and Nestlé on June 22, 2020.  Declaration of Linda Claxton ("Claxton Decl.") ¶ 3.  In accordance with 28 U.S.C. § 1446(a), true and correct copies of "all process, pleadings, and orders" served on Nespresso in this action are attached hereto as **Exhibit A** to the Claxton Declaration.

3.     The Complaint asserts class action claims for: (1) failure to provide meal periods in violation of Cal. Lab. Code §§ 512, 226.7, and the applicable IWC Wage Order; (2) failure to provide rest breaks in violation of Cal. Lab. Code §§ 512, 226.7, 1194, and the applicable IWC Wage Order; (3) failure to pay minimum wages in violation of Cal. Lab. Code §§ 510, 1194, 1194.2, 1197, and the applicable IWC Wage Order; (4) failure to pay overtime wages in violation of Cal. Lab. Code §§ 510, 1194, and the applicable IWC Wage Order; (5) failure to furnish timely and accurate wage statements in violation of Cal. Lab. Code § 227.3; (6) failure to pay all wages owed every pay period in violation of Cal. Lab. Code § 204; (7) failure to pay all wages upon separation in violation of Cal. Lab. Code §§ 201 through 203; and (8) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.  Plaintiff also brings a ninth cause of action pursuant to California's Private

NOTICE OF REMOVAL BY DEFENDANT NESPRESSO USA, INC. PURSUANT TO 28 U.S.C. §§ 1332(D), 1441, AND 1446.

Attorneys General Act ("PAGA"), Cal. Lab. Code §§ 2698, *et seq.*, for violations of the California Labor Code.

4.     As set forth herein, based on the allegations of the Complaint and other evidence collected by Nespresso, this Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C § 1332(d).  Therefore, this action may be removed to this Court, pursuant to 28 U.S.C. § 1441.

5.     In accordance with 28 U.S.C. § 1446(d), Nespresso will promptly serve this notice of removal on Plaintiff's counsel and file a copy with the clerk of the Superior Court for Los Angeles County.

## II.     PROCEDURAL GROUNDS FOR REMOVAL ARE SATISFIED.

6.     Removal is timely, as this Notice is filed within thirty (30) days of Nespresso being served with the summons and complaint.  28 U.S.C. § 1446(b).

7.     Under 28 U.S.C. §§ 84(c) and 1441(a), venue is proper in the United States District Court for the Central District of California because this Court embraces the Superior Court for Los Angeles County, where this action was pending.

8.     None of the defendants in this action answered Plaintiff's Complaint in Los Angeles County Superior Court prior to removal, and Nespresso is not aware of any further proceedings or filings regarding this action in that court.  Nespresso need not secure consent from Nestlé or the "Doe" defendants prior to removal.[1]  28 U.S.C. § 1453(b) ("[S]uch action may be removed by any defendant without the consent of all defendants."); *see, e.g.*, *United Comput. Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002) (explaining that the consent requirement "does not apply to" "unknown" parties).

9.     The removing party need only provide a "short and plain statement of

---

[1] Nespresso is informed and believes that Nestlé intends to file a joinder to this Notice of Removal.

NOTICE OF REMOVAL BY DEFENDANT NESPRESSO USA, INC. PURSUANT TO 28 U.S.C. §§ 1332(D), 1441, AND 1446.

43591231_2.docx

the grounds for removal" and need not submit evidence unless and until the opposing party challenges the factual allegations in the notice of removal.  *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81 (2014); *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("[A] removing defendant's notice of removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements." (citation omitted)).

## III.  THIS COURT HAS JURISDICTION OVER THIS ACTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT.

10.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), which grants federal district courts jurisdiction over putative class actions with more than 100 class members where the aggregate amount in controversy exceeds $5 million and any member of the class of plaintiffs is a citizen of a state different from any defendant.  As set forth below, this action satisfies each of the requirements of Section 1332(d)(2) for original jurisdiction under CAFA.

11.     Support for CAFA jurisdiction in this action is based both on the allegations of the Complaint and Nespresso's investigation of its business records.[2] *See Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1123 (9th Cir. 2013) (A defendant "may remove to federal court when it discovers, based on its own investigation, that a case is removable.").

### A.   This Is A Covered Class Action.

12.     This action meets CAFA's definition of a class action, which is "any civil action filed under Fed. R. Civ. P. 23 or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as

_____

[2] In making its good faith calculations of the size of the purported class and the amounts-in-controversy being sought by the Complaint, Nespresso does not concede or admit, in any fashion, that any claims for such amount, or any amounts, have legal or factual merit, or that the persons on behalf of which such claims are asserted could properly be certified as members of a class under Fed. R. Civ. P. 23, and reserves all rights and defenses to such claims.

a class action."  28 U.S.C. §§ 1332(d)(1)(B), 1435(a) & (b).  Plaintiff purports to bring this action on behalf of "all others similarly situated and aggrieved," and identifies a putative class of current and former retail store employees who allegedly worked for Defendants.  Compl. ¶ 35.  Plaintiff brings these claims pursuant to California's class action statute, Cal. Civ. Proc. Code § 382, and alleges that "there exists an ascertainable and sufficiently numerous Class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives."  Compl. ¶ 36.

**B.    The Proposed Class Exceeds 100 Members.**

13.    Plaintiff seeks to represent all "current and former hourly, nonexempt retail store employees who have worked in California for [Nespresso] and/or [Nestlé] at any time during the period beginning four years prior to the filing of this Complaint through the present."  Compl. ¶ 35.

14.    For purposes of removal, the Court looks to a plaintiff's allegations respecting class size.  *See Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013).  Plaintiff himself asserts that the proposed putative class includes "hundreds" of current and former employees.  Compl. ¶ 37; *see Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 581 (7th Cir. 2017) ("[The defendant] may rely on the estimate of the class number set forth in the complaint.").  Plaintiff's allegations independently satisfy the requirement to show that the putative class likely exceeds 100 members.

15.    According to its business records, Nespresso employed approximately 512 individuals in nonexempt positions in retail stores in California during the applicable time period.[3]  Declaration of Chastity Mastrangelo ("Mastrangelo Decl."), ¶ 4.  Accordingly, for purposes of removal, the aggregate number of putative class members as defined by the Complaint is greater than 100 persons, as required by 28

---

[3] Nestlé does not maintain retail locations in California.

U.S.C. § 1332 (d)(5)(B).

### C.   **The Parties Are Minimally Diverse.**

16.    CAFA requires minimal diversity; that is, at least one putative class member must be a citizen of a state different from any defendant.  28 U.S.C. § 1332(d)(2)(A).

17.    For diversity purposes, an individual is a "citizen" of the state in which he is domiciled.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  An individual's domicile is the place he resides with the intention to remain or to which he intends to return.  *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  Plaintiff resides in California and, on information and belief, is a citizen of California.  *See* Compl. ¶ 10.  And the putative class is defined to include only retail employees who worked in California.  Compl. ¶ 35.  At a minimum, the putative class likely includes at least one California citizen.

18.    "[A] corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  28 U.S.C. § 1332(c)(1); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010) (explaining what constitutes a corporation's principal place of business).  Nespresso is a Delaware corporation with its principal place of business in New York.  Under 28 U.S.C. § 1332(c)(1), Nespresso is a citizen of Delaware and New York.  *See also* Compl. ¶¶ 11, 18.  Nestlé also is a Delaware corporation with its principal place of business in Virginia.  Under 28 U.S.C. § 1332(c)(1), Nestlé is a citizen of Delaware and Virginia.  *See also* Compl. ¶ 12.

19.    Because Plaintiff is a citizen of California and because defendants Nestlé and Nespresso are citizens of Delaware, New York, and Virginia, the parties are at least minimally diverse.

### D.   **The Aggregate Amount In Controversy Exceeds $5 Million.**

20.    Under CAFA, the claims of the individual class members are aggregated to determine if the amount in controversy exceeds the required "sum or

5

Case No.   2:20-cv-6533

NOTICE OF REMOVAL BY DEFENDANT NESPRESSO USA, INC. PURSUANT TO 28 U.S.C. §§ 1332(D), 1441, AND 1446.

43591231_2.docx

value of $5,000,000, exclusive of interest and costs."  28 U.S.C. § 1332(d)(2), (d)(6); *see also Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006).

21.     The amount in controversy "is simply an estimate of the total amount in dispute, not a prospective assessment of the defendant's liability." *Lewis v. Verizon Commc'ns., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).  "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin*, 574 U.S. at 89.  To determine the amount in controversy, the Court must assume that the allegations in the operative pleading are true and that a jury will return a verdict for the plaintiff on all such claims.  *See Cain v. Hartford Life & Accident Ins. Co.*, 890 F. Supp. 2d 1246, 1249 (C.D. Cal. 2012) ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe.") (emphasis and internal quotation marks omitted).  The Court also may consider summary-judgment-type evidence relevant to the amount in controversy.  *See Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002).

22.     Plaintiff does not specifically plead the amount of damages claimed. Where this is the case, a defendant need only make a *prima facie* showing that it is more likely than not that the amount in controversy exceeds $5 million.  *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997).  "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what defendant will actually owe."  *Korn v. Polo Ralph Lauren Corp.,* 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (emphasis omitted).  A "removing defendant is not obligated to 'research, state, and prove plaintiff's claims for damages.'"  *Id.* at 1204-05 (emphasis omitted).  Defendants may rely on "reasonable assumptions" in calculating the amount in controversy for removal purposes.  *Arias*, 936 F.3d at 922. Furthermore, in cases where statutory penalties are sought, as is the case here, "district courts…of California have looked to the statutory maximum…in

determining whether the jurisdictional requirements of CAFA have been met." *Korn,* 536 F. Supp. 2d at 1205.

23.     "[I]n wage-and-hour cases, the amount in controversy turns on the frequency of the alleged violations of California labor laws."  *Hayes v. Salt & Straw, LLC*, 2020 WL 2745244, at *3 (C.D. Cal. May 27, 2020).  If the complaint is ambiguous, as here, defendants are entitled to make reasonable assumptions concerning the number of violations.  *See, e.g.*, *Arias*, 936 F.3d at 922.  An assumed violation rate of one violation per week is frequently considered reasonable where the plaintiff alleges a pattern and practice of conduct.[4]  *E.g.*, *Soto v. Tech Packaging, Inc.*, 2019 WL 6492245, at *5 (C.D. Cal. Dec. 3, 2019) (noting that "other courts within the Ninth Circuit have accepted a rate of one violation per work week as an acceptable basis for calculating the amount in controversy" and accepting same); *Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403, at *7 (C.D. Cal. May 9, 2018) (same); *Arreola v. Finish Line*, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) ("Where. . . the plaintiff pleads that an employer has a regular or consistent practice of violating employment laws. . .  such an allegation supports a defendant's assumptions that every employee experienced at least one violation once per week."); *Jasso v. Money Mart Express, Inc.*, 2012 WL 699465, at *5 (N.D. Cal. Mar. 1, 2012) ("Given the allegations. . . that the violations took place 'at all material times,' one violation per week on each claimed basis is a sensible reading of the alleged amount in controversy, as pleaded by Plaintiff.").

24.     Based on Plaintiff's allegations in the Complaint, evidence collected by Nespresso, and Nespresso's reasonable assumptions concerning violations derived from the allegations in the Complaint, the aggregate amount in controversy from the

---

[4] Each of Plaintiff's claims is based on his allegation that "Defendants' *policy and practice* is to deny earned wages, including premium and overtime pay, to their hourly, nonexempt retail store employees. . . in California."  Compl. ¶ 3 (emphasis added).

Case No.   2:20-cv-6533

NOTICE OF REMOVAL BY DEFENDANT NESPRESSO USA, INC. PURSUANT TO 28 U.S.C. §§ 1332(D), 1441, AND 1446.

43591231_2.docx

putative class allegations satisfies the jurisdictional threshold.  *See Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (finding in wage and hour class action that defendant established amount in controversy by a preponderance of the evidence where defendant's calculations "were relatively conservative, made in good faith, and based on evidence wherever possible").  The Complaint seeks unpaid minimum and overtime wages, other unpaid wages for missed meals and rest breaks, general, special, consequential, and liquidated damages, civil and statutory penalties, restitution, disgorgement of profits, injunctive relief, and reasonable attorneys' fees on eight causes of action brought under a multitude of different labor statutes for each member of the putative class.[5]  *See* Compl. at 31-32 ("Prayer for Relief").

25.     Conservatively, Nespresso estimates that Plaintiff's complaint places at least the following amounts in controversy:

- Failure to provide meal periods (first cause of action): $810,781.04
- Failure to provide rest periods (second cause of action): $810,781.04
- Unpaid minimum wages, included liquidated damaged (third cause of action): $1,621,562.08
- Unpaid overtime wages (fourth cause of action): $1,216,171.55
- Non-compliant wage statement (fifth cause of action): $457,900.00
- Waiting time penalties (seventh cause of action): $1,061,946.48
- **Estimated amount in controversy:** $5,979,142.19
- Estimated attorneys' fees (25%): $1,494,785.55
- **Total estimated amount in controversy:** $7,473,927.74

---

[5] Plaintiff's ninth cause of action, brought under PAGA, is not used here to calculate the amount-in-controversy.  *Yocupicio v. PAE Grp., LLC*, 795 F.3d 1057, 1062 (9th Cir. 2015) (PAGA claims cannot be aggregated with class claims to satisfy the jurisdictional amount required under CAFA).

Case No. 2:20-cv-6533

NOTICE OF REMOVAL BY DEFENDANT NESPRESSO USA, INC. PURSUANT TO 28 U.S.C. §§ 1332(D), 1441, AND 1446.

43591231_2.docx

1.   <u>Plaintiff's First Cause Of Action For Failure To Provide Meal</u>
<u>Periods Places At Least $810,781.04 In Controversy.</u>

26.    Plaintiff's First Cause of Action seeks premium wages for Defendants' alleged failure to provide timely, uninterrupted meal periods, schedule second meal periods on days that employees worked more than ten hours, or pay required meal period premiums.  Compl. ¶¶ 42-50.  Specifically, Plaintiff alleges that, due to Defendants' "failure to schedule meal periods and. . . chronically understaffed staffing model," he and the potential class members "had to work through some or all of their meal periods, have their meal periods interrupted to return to work, and/or wait extended periods of time before taking meal periods."  Compl. ¶ 46.  He also alleges that Defendants "did not schedule second meal periods. . . on days employees worked in excess of 10 hours."  Compl. ¶ 47.  Plaintiff further alleges that Defendants "engaged in a systematic, companywide policy to not pay meal period premiums."  Compl. ¶ 48.  In the alternative, to the extent that Defendants paid Plaintiff and the potential class period premium pay for missed meal periods, Plaintiff alleges that he and the potential class members did not receive "the correct rate of pay for premium wages because Defendants failed to include all forms of compensation. . . in the regular rate of pay."  *Id.*

27.    As a result, Plaintiff alleges that he and the proposed class members are entitled, under Cal. Lab. Code section 226.7(b) and section 11 of IWC Wage Order No. 7-2001, to one additional hour of compensation, at each employee's regular rate of pay, for each work day in which a "timely, statutory, off-duty meal period[]" was not provided.  Compl. ¶ 50.

28.    Plaintiff defines the class as including employees employed "during the period beginning four years prior to the filing of this Complaint through the present."  Compl. ¶ 35.  The statute of limitations for a claim seeking wages for failure to provide legally required meal periods is three years.  Cal. Lab. Code § 203; Cal. Civ. Proc. Code § 338.  However, the statute of limitations is extended to four years

where, as here, the complaint includes a claim for Unfair Business Practices pursuant to Cal. Bus. & Prof. Code § 17200.  *See Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1206 (2011).  Therefore, the relevant statutory period for calculating Defendants' alleged liability for failure to provide meal periods is from June 3, 2016 to the present.

29.     The Complaint does not allege the number of meal periods not provided to Plaintiff or the proposed class members between June 3, 2016 to the present for which premium pay is allegedly due.  Rather, Plaintiff alleges that employees were "routinely" or "frequently" required to work through "some or all" of their meal periods, "often" worked more than ten hours without a second meal period, and that Defendants had a "systemic, companywide policy" to not pay meal period premiums.[6]  Compl. ¶¶ 22, 46, 48.  Where plaintiff alleges a pattern and practice of denying meal and/or rest breaks, defendants may reasonably base their amount in controversy calculations on an estimate that each class member missed one meal period per week.  *See, e.g.*, *Quintana v. Claire's Stores, Inc.*, 2013 WL 1736671, at *6 (N.D. Cal. Apr. 22, 2013) ("Defendants' estimates of one meal or rest break violation per week is an acceptable method to calculate possible damages for these claims."); *Gant v. ALDI, Inc.*, 2020 WL 1329909, at *5 (C.D. Cal. Mar. 20, 2020) ("Because the Complaint alleges that Defendants engaged in a "pattern and practice" of meal and rest break violations, it is reasonable for Defendants to assume that one meal break violation and one rest break violation occurred per employee, per week.").

30.     Based on a review of its business records, which reflect the hiring and termination date, hourly rate of pay, and other employee data for each nonexempt

---

[6] Plaintiff also asserts that whether Defendants engaged in a "pattern or practice" of failing to provide meal periods, impeding their ability to take off-duty meal periods, or failing to properly compensate for missed meal periods are common questions of law and fact as to all potential class members.  Compl. ¶ 38(d)-(f).

retail employee employed by Nespresso in California during the relevant time period between June 3, 2016 and the time of the data transfer on or around June 25, 2020, Nespresso can estimate the number of weeks worked by each individual nonexempt employee during the class period and determine the hourly rate of pay for each individual employee.  Mastrangelo Decl. ¶¶ 3, 9; Claxton Decl. ¶ 4.  Assuming one missed meal period per week, by multiplying the number of work weeks each individual employee was employed during the class period by that employee's hourly rate of pay, Nespresso can estimate allegedly unpaid meal periods premiums for each employee.[7]  For example, Nespresso's employment records reflect that Plaintiff was hired on September 25, 2017 and terminated on February 1, 2020 and had a standard rate of pay of $16 per hour.[8]  Mastrangelo Decl. ¶ 9; *see also* Compl. ¶ 10.  Plaintiff thus was employed by Nespresso for 123 weeks of the class period.  Mastrangelo Decl. ¶ 9.  Assuming one missed meal period per work week, at Plaintiff's hourly rate of pay, Defendants would owe Plaintiff $1,968.00 in allegedly unpaid meal period premiums.

31.     Using its employment records, Nespresso is able to make a similar calculation for each of the 512 potential class members.  Aggregated, the total of these allegedly unpaid meal period premiums works out to **$810,781.04**.  Claxton Decl. ¶ 5(b)(iii).

---

[7] Missed meal period calculation: (work weeks for individual employee) x (1 missed meal per week) x (standard rate of pay for individual employee) = missed meal premiums owed to individual employee.  Claxton Decl. ¶ 5(b).  Once this calculation is complete for each potential class member the missed meal premiums can be aggregated to calculate the total amount in controversy on missed meal claims.  *Id.*  A similar calculation could be made using the total number of weeks worked by all class members and their average rate of pay, but that methodology is less accurate.

[8] Plaintiff alleges that "Defendants employed [him] as an hourly-paid, nonexempt retail sales specialist from approximately August 20, 2017 through approximately January 31, 2020," but Nespresso's business records reflect a hire date of September 25, 2017.  Compl. ¶ 10.  Nespresso uses the more conservative date to calculate potential liability on plaintiff's claims.

Case No. _____   2:20-cv-6533
NOTICE OF REMOVAL BY DEFENDANT NESPRESSO USA, INC. PURSUANT TO 28 U.S.C. §§ 1332(D), 1441, AND 1446.

32.     Further, based on the allegations of the Complaint, this is a conservative estimate of Defendants' potential liability for unpaid meal period premiums.  The actual amount in controversy is likely higher.

a.     First, Plaintiff alleges that he and the potential class members "had to work through *some or all* of their meal periods," and that he "*frequently* worked a majority of his eight (8)-hour shift with no one to relieve him."  Compl. ¶ 46 (emphasis added).  If Plaintiff's allegations are true, then it is likely that he and other employees missed more than one meal period per week.

b.     Second, Plaintiff alleges that the correct "regular rate of pay" for meal period premiums is not the employee's standard hourly rate of pay, but the "regular rate of pay" that is inclusive of "all forms of compensation, such as incentive pay, and/or nondiscretionary bonuses."  Compl. ¶¶ 48, 50.  If Plaintiff is correct, then using an employee's standard hourly pay to estimate the amount of premium wages owed – as Nespresso has done here – undervalues the total amount of allegedly unpaid meal periods premiums owed.

33.     Thus, Plaintiff's First Cause of Action places *at least* **$810,781.04** in controversy, but likely more.

2.     <u>Plaintiff's Second Cause Of Action For Failure To Provide Rest Breaks Places At Least $810,781.04 In Controversy.</u>

34.     Plaintiff's Second Cause of Action seeks premium wages for Defendants' alleged failure to provide rest breaks or pay rest break premiums for missed rest breaks.  Compl. ¶¶ 51-59.  Specifically, Plaintiff alleges that because Defendants' "failed to authorize and permit rest breaks," he and the potential class members "were routinely required to work through rest breaks" due to the same "chronically understaffed staffing model" complained of in Plaintiff's First Cause of Action.  Compl. ¶¶ 55-56.  Plaintiff also alleges that Defendants "implemented a companywide policy to not pay rest break premiums."  Compl. ¶ 57.  In the alternative, Plaintiff alleges that he and the potential class members did not receive

Case No. 2:20-cv-6533
NOTICE OF REMOVAL BY DEFENDANT NESPRESSO USA, INC. PURSUANT TO 28 U.S.C. §§ 1332(D), 1441, AND 1446.

43591231_2.docx

"the correct rate of pay for premium wages because Defendants failed to include all forms of compensation. . . in the regular rate of pay." *Id.*

35.     As a result, Plaintiff alleges that he and the proposed class members are entitled, under Cal. Lab. Code section 226.7(b), to one additional hour of compensation, at each employee's regular rate of pay, for each work day "in which Defendants failed to provide employees with timely and/or paid rest breaks." Compl. ¶ 59.

36.     Similar to meal period claims, the statute of limitations for a claim seeking wages for failure to pay legally required rest breaks is three years, which is extended to four years by Plaintiff's UCL claim.  Cal. Lab. Code § 203; Cal. Civ. Proc. Code § 338; *see Sullivan*, 51 Cal. 4th at 1206.

37.     The Complaint does not allege the number of rest breaks not provided to Plaintiff or the proposed class members between June 3, 2016 to the present for which premium pay is allegedly due.  Rather, Plaintiff alleges that employees were "routinely" required to work through rest breaks, "regularly" worked without receiving "at least one" of their required rest breaks or "did not take their rest breaks at all" due to Defendants' "chronically" understaffed model, and that Defendants had a "companywide policy" to not pay rest break premiums.[9]  Compl. ¶¶ 23-24, 55-57. Because Plaintiff alleges a pattern and practice of denying meal and/or rest breaks, defendants may reasonably estimate that each class member missed one rest period per week.  *See, e.g.*, *Quintana*, 2013 WL 1736671, at *6; *Gant*, 2020 WL 1329909, at *5.

38.     Based on a review of its business records, as with the estimates of missed meal periods discussed above, Nespresso is able to estimate allegedly unpaid

---

[9] Plaintiff also asserts that whether Defendants engaged in a "pattern or practice" of failing to properly compensate employees for failing to provide uninterrupted rest breaks are common questions of law and fact as to all potential class members. Compl. ¶ 38(q).

rest periods premiums for each employee by assuming one missed rest period per week that each individual employee was employed during the class period and multiplying that number by that employee's hourly rate of pay.[10]  Mastrangelo Decl. ¶¶ 3, 9; Claxton Decl. ¶ 5(b).  For example, as discussed above, Plaintiff was employed by Nespresso for 123 weeks of the class period and, according to the Complaint, "typically worked five (5) days per week for four (4) or more hours per day." *Id.*; Compl. ¶ 10.  Assuming one missed rest period per week, at Plaintiff's hourly rate of pay, Defendants would owe Plaintiff $1,968.00 in allegedly unpaid rest period premiums.

39.     Using its employment records, Nespresso is able to make a similar calculation for each of the 512 potential class member in order to estimate each individual employee's allegedly unpaid rest period premiums.  Aggregated, the total of these allegedly unpaid rest period premiums works out to **$810,781.04**.  Claxton Decl. ¶ 5(b)(iv).

40.     Further, based on the allegations of the Complaint, this is a conservative calculation that likely underestimates Defendants' potential liability for unpaid rest period premiums.  Plaintiff's allegations suggest that he and potential class members missed rest breaks "regularly" or "routinely," suggesting more than one per week. Compl. ¶¶ 55-56. Plaintiff also alleges that rest period premiums should be paid at the higher "regular rate of pay," meaning that using an employee's standard hourly pay likely undervalues the total amount-in-controversy on the claim.  Compl. ¶¶ 57, 59.

---

[10] Missed rest break calculation: (work weeks for individual employee) x (1 missed rest break per week) x (standard rate of pay for individual employee) = missed rest break premiums owed to individual employee.  Claxton Decl. ¶ 5(b)(iii)-(iv).  Once this calculation is complete for each potential class member, the missed rest break premiums can be aggregated to calculate the total amount in controversy on missed rest break claims. *Id.*

14

Case No. 2:20-cv-6533

NOTICE OF REMOVAL BY DEFENDANT NESPRESSO USA, INC. PURSUANT TO 28 U.S.C. §§ 1332(D), 1441, AND 1446.

43591231_2.docx

41.     Thus, Plaintiff's Second Cause of Action places *at least* **$810,781.04** in controversy, but likely more.

3.     Plaintiff's Third Cause Of Action For Failure To Pay Minimum Wages Places At Least $1,612,562.08 In Controversy.

42.     Plaintiff's Third Cause of Action seeks unpaid minimum wages for time allegedly worked but not compensated.  Compl. ¶¶ 60-74.  Specifically, Plaintiff alleges that he and the potential class members were not paid for time spent "submitting to bag searches and waiting for a keyholder to unlock the door so employees can exit the premises to leave after their shifts end" or for other "hours worked off-the-clock" that did not qualify for overtime pay.  Compl. ¶¶ 67, 71.  Plaintiff further alleges that Defendants "implemented and continue to implement an unwritten rounding policy that. . . has resulted, over a period of time, in Defendants failing to compensate its [sic] employees properly for all time worked."  Compl. ¶ 71.

43.     As a result, Plaintiff alleges that he and the proposed class members are entitled to "the unpaid amount of minimum wages, pre-judgment interest, liquidated damages, statutory penalties, attorneys' fees, and costs according to Labor Code sections 204, 558, 1194 *et seq.*, 1197, 1198, and Code of Civil Procedure 1021.5."  Compl. ¶ 74.

44.     The statute of limitations for a claim seeking unpaid minimum wages is three years.  Cal. Civ. Proc. Code § 338.  Similar to the meal and rest period claims, this is extended to four years due to Plaintiff's UCL claim.  *See Sullivan*, 51 Cal. 4th at 1206; *Maravilla v. Rosas Bros. Constr., Inc.*, 401 F. Supp. 3d 886, 901 (N.D. Cal. 2019) (allowing plaintiff to recover an additional year's worth of unpaid wages not otherwise recoverable under Cal. Lab. Code § 1194 based on UCL claims).

45.     The Complaint does not allege number of violations that occurred between June 3, 2016 to the present, or the amount of unpaid minimum wages or number of hours for which wages are allegedly owed to Plaintiff or the proposed

class members.  Rather, Plaintiff alleges that Defendants implemented "company-wide policies, including timekeeping policies," have "an unwritten rounding policy" that has resulted in employees not being compensated for "all time worked," and that their "unlawful conduct" in failing to compensate employees for all time worked has occurred "continuously."[11]  Compl. ¶¶ 17, 71, 73.  He alleges that employees were "frequently and regularly" required to endure "off-the-clock waiting periods" and were assigned, required, and permitted to work without pay "[a]t all times relevant." Compl. ¶¶ 3, 21, 26, 67.  Due to Plaintiff's allegation of a pattern and practice of failing to compensate employees for all time worked, Nespresso may reasonably base its amount in controversy calculations on an estimate that each class member was not compensated for one hour of minimum wages per week.  *See, e.g.*, *Soto v. Tech Packaging, Inc.*, 2019 WL 6492245, at *5 (finding reasonable Defendant's assumption that the class members were not compensated for one hour of minimum wages per work week where plaintiff alleged a "pattern and practice" of wage abuse); *Soto v. Greif Packaging, LLC*, 2018 WL 1224425, at *3 (C.D. Cal. Mar. 8, 2018) (finding allegation that defendant failed to pay minimum wage for all hours worked on a "consistent and regular basis" sufficient to support estimate of one hour per week per class member); *Francisco v. Emeritus Corp.*, 2017 WL 2541401, at *7 (C.D. Cal. June 12, 2017) ("Because Plaintiff claims that unpaid minimum wage and overtime violations occurred regularly, as a pattern and practice, the Court finds Defendants' assumption of one minimum wage and overtime violation per workweek to be reasonable.").

---

[11] Plaintiff also asserts that whether Defendants engaged in a "pattern or practice" of failing to pay employees for the total hours worked or failing to properly compensate employees for time spent submitting to bag searches or waiting for keyholder to permit them to exit, or engaged in a "common course" of requiring or permitting employees to not report all hours worked or failing to maintain accurate time records are common questions of law and fact as to all potential class members.  Compl. ¶ 38(c),(j)-(m).

NOTICE OF REMOVAL BY DEFENDANT NESPRESSO USA, INC. PURSUANT TO 28 U.S.C. §§ 1332(D), 1441, AND 1446.

46.     As discussed in the calculations of meal and rest periods premiums, Nespresso is able to determine each potential class member's hourly rate of pay and estimate the number of weeks that each individual employee was employed during the class period based on its business records.  Mastrangelo Decl. ¶¶ 3, 9; Claxton Decl. ¶ 5(c)(ii).  Assuming Plaintiff and the class members are owed one additional hour of compensation per week, at their standard rate of pay, Nespresso can estimate the unpaid wages allegedly owed to each individual employee.[12]  Aggregating the individual estimates of unpaid wages for each of the 512 potential class members, the total of these allegedly unpaid wages works out to **$810,781.04**.  Claxton Decl. ¶ 5(c)(ii).

47.     Additionally, Plaintiff seeks liquidated damages on his unpaid minimum wages claim, which entitles an aggrieved employee to recover damages "in an amount equal to the wages unlawfully unpaid and interest thereon."  Cal. Lab. Code § 1194.2; Compl. ¶¶ 65, 68, 73-74.  Liquidated damages may be recovered *in addition* to any allegedly unpaid wages.  *Koreisz v. On Q Fin., Inc.*, 2018 WL 6567694, at *5 (C.D. Cal. Dec. 12, 2018) ("Section 1194.2 allows an employee to recover, in addition to any unpaid wages, a penalty equal to the amount of unpaid wages in an action under section 1194.").  For purposes of calculating liquidated damages, Courts have allowed defendants to double the total amount owed on the unpaid wages claim.  *See, e.g.*, *Lucas*, 2018 WL 2146403, at *6 (agreeing with defendant that, "because Plaintiff seeks liquidated damages on her minimum wage claim [citation], the total amount of this claim should be doubled"); *Hernandez v. Nuco2 Mgmt., LLC*, 2018 WL 933506, at *3 (E.D. Cal. Feb. 16, 2018) (finding that "[t]he liquidated damages calculations yield the same amounts" as the unpaid

---

[12] Unpaid minimum wages owed: (work weeks for individual employee) x (one unpaid hour per week) x (standard rate of pay for individual employee) = unpaid minimum wages owed to individual employee.  Claxton Decl. ¶ 5(c)(ii).  Once this calculation is complete for each potential class member, the individual calculations can be aggregated to determine the total unpaid minimum wages in controversy.

Case No. 2:20-cv-6533

43591231_2.docx

minimum wages calculations).  Therefore, Plaintiff's claim for liquidated damages on places an *additional* **$810,781.04** in controversy.

48.     Further, the actual amount in controversy is likely higher.  First, Plaintiff's allegations imply that the alleged violations resulting in unpaid minimum wages occurred during most or all shifts worked.  *See, e.g.,* Compl. ¶ 3 (defendants' policy of not paying employees for waiting time at the end of shifts "has been in effect by Defendants' *for years*"); Compl. ¶ 72 (defendants' "unlawful conduct" occurred "*continuously*").  If true, then it is likely that aggregated unpaid time would work out to more than one hour per week for at least some of the potential class members.  Second, Plaintiff also seeks statutory penalties under a number of statutes, which are not included in the calculations here.  Compl. ¶ 74 & at 32 ("Prayer for Relief") ("For penalties pursuant to Labor Code sections 204, 206, 210, 225.5, 226, 226.3, 226.7, 510, 512, 558, 1174.5, 1182.12, 1194, 1194.2, 1197.1, and 1198.").

49.     Thus, combining estimated unpaid wages and liquidated damages, Plaintiff's Third Cause of Action places *at least* **$1,621,562.08** in controversy, but likely more.

4.     <u>Plaintiff's Fourth Cause Of Action For Failure To Pay Overtime Wages Places At Least $1,216,171.55 In Controversy.</u>

50.     Plaintiff's Fourth Cause of Action seeks unpaid overtime wages for overtime and double time allegedly worked but not compensated.  Compl. ¶¶ 74-81. Specifically, Plaintiff alleges that Defendants "knowingly and willfully refused. . . to compensate Plaintiff and the Class for all wages earned and all hours worked" and that he and the potential class members  continue to suffer "substantial losses" related to "use and enjoyment" of the uncompensated overtime wages.  Compl. ¶ 79. Plaintiff also incorporates by reference his earlier allegations concerning unpaid regular and overtime, including that he and the potential class members worked "in excess of eight (8) hours per work day or forty (40) hours per work week" for which they were not compensated at time and a half (1.5 times) and that, to the extent they

18

Case No.   2:20-cv-6533

NOTICE OF REMOVAL BY DEFENDANT NESPRESSO USA, INC. PURSUANT TO 28 U.S.C. §§ 1332(D), 1441, AND 1446.

43591231_2.docx

worked in excess of twelve (12) hours in one day, they were not compensated at double (2 times) their regular rate of pay.  Compl. ¶¶ 25-27.  Plaintiff further alleges that, Defendants "failed to pay the correct amount of overtime by miscalculating the regular rate" because they did not "include all amounts in the regular rate of pay for the purposes of calculating overtime."  Compl. ¶¶ 26-27.

51.     As a result, Plaintiff alleges that he and the proposed class members are entitled "to recover nominal, actual, compensatory, punitive, and exemplary damages in amounts according to proof. . . but in amounts in excess of the minimum jurisdiction of this Court."[13]  Compl. ¶ 81.  He also seeks to recover "the unpaid balance of overtime compensation. . . plus interest, penalties, attorneys' fees, expenses, and costs of suit."  Compl. ¶ 81.

52.     Plaintiff alleges that he and the potential class members are owed overtime or double time rates for "overtime work performed during the four (4) years preceding the filing of the Complaint."  Compl. ¶¶ 35, 78.  The statute of limitations for a claim seeking unpaid overtime wages is three years, but extended to four years by Plaintiff's UCL claim.  Cal. Civ. Proc. Code § 338; *see Sullivan*, 51 Cal. 4th at 1206; *Maravilla*, 401 F. Supp. 3d at 901.

53.     The Complaint does not allege the number of violations that occurred between June 3, 2016 to the present, or the amount of unpaid overtime wages or number of hours for which overtime wages are allegedly owed to Plaintiff or the proposed class members.  Rather, Plaintiff alleges that Defendants have a "policy and practice" of denying overtime pay to employees and have implemented "company-wide [timekeeping] policies."[14]  Compl. ¶¶ 3, 17.  Plaintiff alleges that

---

[13] As this case was filed as an unlimited civil case in California state court, (Ex. A, "Civil Case Cover Sheet"), the amount necessary for minimum jurisdiction is more than $25,000.  *See* Cal. Civ. Proc. Code §§ 85-86.1 (defining a limited civil case as one where the amount in controversy does not exceed $25,000).

[14] Plaintiff also asserts that whether Defendants engaged in a "common course" of requiring or permitting employees to not report all hours worked or failing to maintain accurate time records or engaged in a "pattern and practice" of failing to

NOTICE OF REMOVAL BY DEFENDANT NESPRESSO USA, INC. PURSUANT TO 28 U.S.C. §§ 1332(D), 1441, AND 1446.

43591231_2.docx

Defendants "regularly" fail to pay employees "the correct amount of and rate for overtime wages," that Defendants' "unwritten rounding policy" has resulted in accumulated unpaid overtime, and that Plaintiff and the potential class members have "consistently" worked more than eight hours per day or forty hours per week, but not been compensated for overtime hours. Compl. ¶¶ 27, 71, 78. Based on these allegations of a pattern and practice of failing to compensate for overtime, Nespresso may reasonably base its amount in controversy calculations on an estimate that each class member was not compensated for one hour of overtime per week. *See, e.g.*, *Francisco*, 2017 WL 2541401; *Feao v. UFP Riverside, LLC*, 2017 WL 2836207, at *5 (C.D. Cal. June 29, 2017) (approving of defendant's "measured" assumption that "each class member worked only one unpaid hour of overtime and missed only one hour of minimum wage work per work week"); *Ray v. Wells Fargo Bank, N.A.*, 2011 WL 1790123, at *6-7 (C.D. Cal. May 9, 2011) (allegation of "consistent overtime work" justified defendant's "reasonable and conservative" assumption that each class member was entitled to one hour of overtime per week).

54.     Further, these calculations are not duplicative of the amount in controversy calculations on Plaintiff's unpaid minimum wage claim. Plaintiff alleges employees "should be, but were not compensated for, *both* straight hours and overtime hours worked" in excess of regular hours, and he demands relief on his unpaid minimum wage claims and unpaid overtime claims under two separate causes of action. Compl. ¶ ¶27, 60-81 (emphasis added). For purposes of calculating the amounts in controversy, these are considered separate types of damages. *See, e.g.*, *Lucas*, 2018 WL 2146403, at *8 (finding that "the unpaid minimum and overtime wages appear to be separate types of damages that can be factored into the amount in controversy" where plaintiff sought to recover both); *Oda v. Gucci Am., Inc.*, 2015

---

pay the correct amount of overtime or double time hours are common questions of law and fact as to all potential class members. Compl. ¶ 38(j),(m),(r)-(s).

Case No.  2:20-cv-6533

NOTICE OF REMOVAL BY DEFENDANT NESPRESSO USA, INC. PURSUANT TO 28 U.S.C. §§ 1332(D), 1441, AND 1446.

43591231_2.docx

WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) ("[B]ecause Plaintiffs include separate claims for both failure to pay regular wages and failure to pay overtime, [Defendant] properly assumes at least one of each type of violation per week.").

55.     Based on a review of its business records, Nespresso is able to estimate the number of weeks that each individual employee worked during the class period, determine each potential class member's hourly rate of pay, and estimate each employees overtime rate (1.5 times the hourly rate of pay, exclusive of non-discretionary bonuses, incentive pay, etc.). Mastrangelo Decl. ¶¶ 3, 9; Claxton Decl. ¶ 5(d)(ii). Assuming Plaintiff and the class members are owed one additional hour of overtime compensation per week, Nespresso can estimate the unpaid overtime wages allegedly owed to each individual employee.[15] For example, Plaintiff was employed by Nespresso for 123 weeks of the class period and his time-and-a-half overtime rate is $24 per hour (1.5 times his $16 per hour standard rate). Mastrangelo Decl. ¶ 9. Assuming Plaintiff is owed one additional hour of unpaid overtime wages per week, at one and a half time his hourly rate, Defendants would owe Plaintiff $2,952.00 in allegedly unpaid overtime wages.

56.     From its employment records, Nespresso is able to make a similar calculation for each of the 512 potential class member in order to estimate each individual employee's allegedly unpaid overtime wage. Aggregated together, the total of these allegedly unpaid wages works out to **$1,216,171.55**. Claxton Decl. ¶ 5(d)(ii).

---

[15] Unpaid overtime wages owed: (work weeks for individual employee) x (one unpaid overtime hour per week) x (1.5 x (standard rate of pay for individual employee)) = unpaid overtime wages owed to individual employee. Claxton Decl. ¶ 5(d)(ii). Once this calculation is complete for each potential class member, the individual calculations can be aggregated to determine the total unpaid overtime wages in controversy. *Id.*

NOTICE OF REMOVAL BY DEFENDANT NESPRESSO USA, INC. PURSUANT TO 28 U.S.C. §§ 1332(D), 1441, AND 1446.

43591231_2.docx

57.    Further, based on the allegations of the Complaint, this is a conservative estimate of Defendants' potential liability for unpaid overtime wages.  The actual amount in controversy is likely higher for a multitude of reasons:

a.    First, in addition to seeking the balance of unpaid overtime wages, Plaintiff seeks "nominal, actual, compensatory, punitive, and exemplary damages in amounts according to proof."  Compl. ¶ 80.  These damages are too speculative to be reasonably estimated.  However, Plaintiff alleges that the damages sought exceed the California state court's minimum amount in dispute for an unlimited claim, meaning Plaintiff demands at least $25,000.01 in damages not included in these calculations.  Compl. ¶ 80.

b.    Second, Plaintiff alleges that the correct "regular rate of pay" for overtime pay is not the employee's standard hourly rate of pay, but the "regular rate of pay," which Plaintiff defines elsewhere as inclusive of "all forms of compensation, such as incentive pay, and/or nondiscretionary bonuses."  *See* Compl. ¶¶ 26-27, 57, 59, 76, 78.  Plaintiff also alleges that he and the potential class members sometimes worked in excess of twelve (12) hours per day, for which they would be owed double pay.  Compl. ¶¶ 25, 76, 78.  If Plaintiff is correct, then using 1.5 times the employee's standard hourly pay undervalues the total amount of allegedly unpaid overtime wages owed.

c.    Third, Plaintiff seeks penalties on his overtime claims under a number of statutes, which are not included in these calculations.  Compl. ¶ 81 & at 32 ("Prayer for Relief").

58.    Thus, Plaintiff's Fourth Cause of Action places *at least* **$1,216,171.55** in controversy, but likely more.

NOTICE OF REMOVAL BY DEFENDANT NESPRESSO USA, INC. PURSUANT TO 28 U.S.C. §§ 1332(D), 1441, AND 1446.

5.      Plaintiff's Fifth Cause Of Action For Failure To Furnish Timely And Accurate Wage Statements Places Approximately $457,900.00 In Controversy.

59.     Plaintiff's Fifth Cause of Action seeks penalties under Cal. Lab. Code § 226(e) for failure to furnish timely and accurate wage statements. Compl. ¶¶ 82-87. Specifically, Plaintiff alleges that, per his other allegations, Defendants failed to accurately record overtime hours and failed to accurately record all rates of pay, resulting in inaccurate wage statements. Compl. ¶¶ 84-85.

60.     As a result, Plaintiff alleges that he and the proposed class members are entitled to recover penalties under Cal. Lab. Code § 226(e), plus "interest, attorneys' fees and costs." Compl. ¶ 87. The applicable penalty is $50 for the initial pay period in which a violation occurs and $100 for each subsequent violation, up to a maximum aggregate penalty of $4,000. Cal. Lab. Code § 226(e).

61.     The applicable statute of limitations for a claim seeking Labor Code section 226(e) penalties is one year (from June 3, 2019 to the present). Cal. Civ. Proc. Code § 340(a).

62.     The Complaint does not allege the number of violations that occurred between June 3, 2019 and the present, but relies on his other allegations to support his claim that the wage statements were inaccurate.[16] *See* Compl. ¶ 29. If Plaintiff's allegations are true, and reasonably assuming that each potential class member missed at least one meal or rest period per week and/or worked at least an hour without pay, then all wage statements issued from June 3, 2019 to the present were deficient. *Koreisz*, 2018 WL 6567694, at *6 (finding "reasonable" defendant's assumption that "all wage statements would not accurately reflect Plaintiff and the

---

[16] Plaintiff also asserts that are common questions of law and fact as to all potential class members include whether Defendants engaged in a "common course" of failing to maintain accurate time records, among other contentions regarding a "common course" or "pattern and practice" of conduct that would result in inaccurate wage statements if found to be true. Compl. ¶ 38(m).

23

NOTICE OF REMOVAL BY DEFENDANT NESPRESSO USA, INC. PURSUANT TO 28 U.S.C. §§ 1332(D), 1441, AND 1446.

class members' compensation" based on broad allegations); *Korn,* 536 F. Supp. 2d at 1205 (court may assume maximum statutory penalty for the purpose of calculating amount in controversy).

63.     Based on a review of Nespresso's business records, 229 non-exempt employees in California worked 8,980 weeks total from June 3, 2019 to the present. Mastrangelo Decl. ¶ 8.  Because Nespresso pays its employees bi-weekly, it issued approximately 4,579 wages statements during this time period.  Mastrangelo Decl. ¶¶ 5, 8; Claxton Decl. ¶ 5(e)(ii).  Assuming that all wage statements were deficient, Defendants would owe Plaintiff and the potential class members **$457,900.00** in potential statutory penalties.[17]

64.     This does not exceed the maximum aggregate statutory penalty of $4,000 per employee for the relevant one year time period.  Since the statute states that the appropriate award is the greater of actual damages or the aggregate penalty per employee, the "maximum aggregate penalty is a potential *floor* on the amount in controversy for this claim," not the maximum amount recoverable under Labor Code section 226(e).  *Graham v. IFCO Sys. N.A., Inc.*, 2017 WL 1243498, at *9 (C.D. Cal. Mar. 3, 2017) (emphasis added).

65.     Thus, Plaintiff's Fifth Cause of Action places *at least* **$457,900.00** in controversy.

      6.     Plaintiff's Seventh Cause Of Action For Waiting Time Penalties Places Approximately $1,009,296.22 In Controversy.

66.     Plaintiff's Seventh Cause of Action seeks penalties under Cal. Lab. Code § 203 for failure to timely pay wages due at termination.  Compl. ¶¶ 93-100 Specifically, Plaintiff alleges that Defendants "willfully" failed to compensate Plaintiff and the potential class members for the "full amount of wages due and

---

[17] *See, e.g., Lucas*, 2018 WL 2146403, at *8 (calculating penalties under Section 226(e)).

owing to them," including for uncompensated hours, overtime, and missed meal and rest periods, within 72 hours following termination.  Compl. ¶¶ 95, 98.

67.     As a result, Plaintiff alleges that he and the proposed class members are entitled to recover penalties pursuant to Cal. Lab. Code § 203.  Compl. ¶ 100.  An employer that willfully fails to pay all wages due at termination within the required time is subject to a penalty whereby the employee's wages continue to accrue for up to 30 days from the due date until back wages are paid or an action is commenced.  Cal. Lab. Code § 203.

68.     The applicable statute of limitations for a claim seeking Labor Code section 203 penalties is three years (from June 3, 2017 to the present).  Cal. Lab. Code § 203; Cal. Civ. Proc. Code § 338.

69.     The Complaint does not allege the number of violations that occurred between June 3, 2017 and the present.  Instead, Plaintiff relies on his other allegations to support his claim that he and the potential class members did not receive all wages owed to them upon termination.[18]  *See* Compl. ¶ 98.  If Plaintiffs' other claims are found to be true, all class members terminated more than thirty (30) days ago are entitled to 30 days' waiting period wages under Labor Code section 203.  Plaintiff also claims that he and the potential class members worked in excess of eight (8) hours per work day or forty (40) hours per work week "[a]t all times relevant," suggesting that most potential class members were full time employees.  *See* Compl. ¶ 25.  Therefore, it is reasonable to assume that potential class members are each owed 240 hours of additional compensation at their hourly rate of pay – the equivalent of 30 days' of full time work.  *See Soto v. Tech Packaging, Inc.*, 2019 WL

---

[18] Plaintiff also asserts that are common questions of law and fact as to all potential class members include whether Defendants engaged in a "pattern and practice of failing to pay employees for all time worked or a "common course" of failing to pay nonexempt employees all wages due upon termination, among other contentions regarding a "common course" or "pattern and practice" of conduct that would result in wages remaining unpaid upon termination if found to be true.  Compl. ¶ 38(c),(w).

6492245, at *8 (finding "reasonable" defendant's assumption that putative class members did not receive final wages for the full 30-day period under which penalties may accrue."); *Long v. Destination Maternity Corp.*, 2016 WL 1604968, at *9 (S.D. Cal. Apr. 21, 2016) (finding that Defendant's assumption that final wages went unpaid for the full thirty days is reasonable where plaintiff alleges that defendant failed to pay final wages and still had not paid plaintiff all wages).

70.     Based on a review of Nespresso's business records, 249 nonexempt employees in California had their employment terminated from June 3, 2017 to the the date of the data transfer on or about June 25, 2020.  Mastrangelo Decl. ¶ 7; Claxton Decl. ¶ 5(f)(ii).  Using each individual employee's hourly rate of pay, Nespresso can determine the amount of waiting time penalties owed to each individual employee under Labor Code section 203.[19]  For example, at his standard rate of pay of $16 per hour, Plaintiff would be owed $3,840 in penalties under Labor Code section 203.  Aggregated together, the total of these waiting time penalties for all 512 potential class members works out to **$1,061,946.48**.  Claxton Decl. ¶ 5(f)(ii).

71.     Thus, Plaintiff's Seventh Cause of Action places approximately **$1,061,946.48** in controversy.

> 7.      Plaintiff's Prayer for Attorney's Fees Places an Additional $1,494,785.55 In Controversy.

72.     Plaintiff seeks attorneys' fees on behalf of the putative class.  Compl. at 32 ("For reasonable attorneys' fees pursuant to Labor Code sections 218.5, 226, 1194, 2699(g), and Code of Civil Procedure section 1021.5").  Attorneys' fees are properly included in the amount in controversy.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award

---

[19] Calculation of waiting time penalties: (employee's standard rate of pay at termination) x (8 hrs per day) x (30 day maximum amount of time during which penalties may accrue).  Claxton Decl. ¶ 5(f)(ii).  Once this number is calculated for each potential class member, the penalties can be aggregated to determine the amount in controversy.

Case No.  2:20-cv-6533

NOTICE OF REMOVAL BY DEFENDANT NESPRESSO USA, INC. PURSUANT TO 28 U.S.C. §§ 1332(D), 1441, AND 1446.

of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy.").

73.    While it is not a bright line rule that the amount of attorneys' fees in controversy is 25% of all other alleged recovery, *Fritsch v. Swift Transp. Co. of Ariz. LLC*, 899 F.3d 785, 796 (9th Cir. 2018), courts routinely accept 25% as a reasonable benchmark of attorneys' fees for calculating the amount in controversy. *See, e.g., Ramirez v. Benihana Nat'l Corp.*, 2019 WL 131843, *2 (N.D. Cal. Jan. 8, 2019) (applying 25% benchmark post-*Fritsch* because no factors "reflect a departure from such benchmark is warranted"); *Altamirano v. Shaw Indus., Inc.*, 2013 WL 2950600, at *13 (N.D. Cal. June 14, 2013) ("[T]he Ninth Circuit has recognized this percentage [25% of the total amount in controversy] as reasonable."); *see also Lucas*, 2018 WL 2146403, at *12 (collecting cases in which 25% benchmark for attorneys' fees was applied).

74.    Accordingly, including attorneys' fees of 25% of the amount in controversy is reasonable for estimating the total amount in controversy. *See, e.g.*, *Jasso*, 2012 WL 699465, at *6-7 (holding that "it was not unreasonable for [Defendant] to rely on" an "assumption about the attorneys' recovery as a percentage of the total amount in controversy" and noting that "it is well established that the Ninth Circuit 'has established 25% of the common fund as a benchmark award for attorney fees.'").

75.    As it stands, the total amount in controversy as calculated in Paragraphs 26 through 71 above is *at least* **$5,979,142.19**.

76.    At a 25% estimated rate, Plaintiff's prayer for attorneys' fees therefore adds *at least* **$1,494,785.55** to the amount in controversy.

77.    Including attorneys' fees brings the total amount in controversy to **$7,473,927.74**, easily exceeding the $5 million threshold required to establish this Court's jurisdiction under CAFA.

Case No.   2:20-cv-6533

NOTICE OF REMOVAL BY DEFENDANT NESPRESSO USA, INC. PURSUANT TO 28 U.S.C. §§ 1332(D), 1441, AND 1446.

43591231_2.docx

**E.     No Exception Applies to Defeat CAFA Jurisdiction.**

78.     Neither CAFA's "local controversy" nor its "home state" exceptions apply to this case.  For the home state exception to apply, all primary defendants must be citizens of the state in which the case is filed.  28 U.S.C. § 1332(d)(B); *see also Corsino v. Perkins*, 2010 WL 317418, at *5 (C.D. Cal. Jan. 19, 2010). Similarly, for the local controversy exception to apply, at least one defendant must be a citizen of California, and that defendant's conduct must form a significant basis for the claims asserted by the proposed plaintiff class.  28 U.S.C. § 1332(d)(4)(i)(II). Neither Nespresso nor Nestlé are citizens of California, so neither exception applies.

## IV.     RESERVATIONS OF RIGHTS.

79.     By removing this matter, Nespresso does not waive and, to the contrary, reserves any rights it may have, including, without limitation, all available arguments and affirmative defenses.  Nespresso does not concede that class certification is appropriate or that Plaintiff is entitled to any recovery whatsoever.  Should the Court or opposing counsel request additional information, evidence, and/or calculations to demonstrate that this Action places at least $5 million in controversy, Nespresso reserves the right to refine the methodologies used here and calculate the amount in controversy with greater precision, which may significantly increase the result.  In the event that Plaintiff files a request to remand, or the Court considers remand *sua sponte*, Nespresso respectfully requests the opportunity to submit additional argument and/or evidence in support of removal.

## V.     CONCLUSION

WHEREFORE, Defendant Nespresso USA, Inc. respectfully requests that its Notice of Removal be deemed good and sufficient and for this Court to exercise subject matter jurisdiction over this removed action.

Case No. 2:20-cv-6533

43591231_2.docx

DATED: July 22, 2020

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By:  /s/ Linda Claxton
Linda Claxton
Kathleen J. Choi
Sage S. Stone
Melis Atalay

Attorneys for Defendant
NESPRESSO USA, INC.

43591231.2

29

Case No. 2:20-cv-6533